## EXHIBIT A

**Proposed Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------------x
In re:                                          :     Chapter 11
                                                :
A123 SYSTEMS, INC., et al.,                     :     Case No. 12-12859 (KJC)
                                                :
                                                :     Jointly Administered
                        Debtors.¹               :
                                                :     Re: Docket No. [      ]
----------------------------------------------------------------x
```

## ORDER (I) APPROVING BID PROCEDURES IN
## CONNECTION WITH SALE OF CERTAIN ASSETS OF THE DEBTORS;
## (II) SCHEDULING HEARING TO CONSIDER SALE OF ASSETS; (III) APPROVING
## FORM AND MANNER OF NOTICE THEREOF; (IV) APPROVING BREAK-UP FEE
## AND EXPENSE REIMBURSEMENT; AND (V) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**")² of the above-captioned debtors

and debtors-in-possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, 365,

503 and 507 of Title 11 of the United States Code (the "**Bankruptcy Code**"), as supplemented

by Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), for entry of orders approving, among other things, the sale of certain

assets of the Debtors, related bidding procedures, and certain protections for potential purchasers

of such assets; and the Court having determined that the relief provided herein is in the best

interest of the Debtors, their estates, their creditors and other parties in interest; and due and

adequate notice of the Motion having been given under the circumstances; and upon the record

of the hearing on the Motion, and the full record of these cases; and after due deliberation

thereon; and good and sufficient cause appearing therefor, it is hereby:

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: A123 Systems, Inc. (3876); A123 Securities Corporation (5388); and Grid Storage Holdings LLC (N/A).  The above-captioned Debtors' mailing address is c/o A123 Systems, Inc., 200 West Street, Waltham, Massachusetts 02451.

[2]     Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**FOUND AND DETERMINED THAT:**

A.      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable.  See Bankruptcy Rule 7052.

B.      Except as otherwise determined in any other Order of this Court, this Court has jurisdiction over the Motion and the transactions contemplated by the Stalking Horse Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and except as otherwise set forth in separate orders regarding the proposed assumption and assignment of Executory Contracts or Unexpired Leases (as defined in the Motion), no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing.  Subject to the immediately preceding sentence, a reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.      The Debtors' proposed notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction (as defined in the Bidding Procedures), the sale of the Purchased Assets, and the Bidding Procedures to be employed in connection therewith.

E.      The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, including:  (a) the payment of the Break-Up Fee and Expense Reimbursement, if necessary, to the Purchaser in accordance with the Stalking Horse Purchase Agreement; (b) the scheduling of a bid deadline, auction and sale hearing with respect to the proposed sale of the Purchased Assets; and (c) the establishment of procedures to fix the

Cure Amounts to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of the Assumed Contracts and Assumed Leases.

F.      The Stalking Horse Purchase Agreement and its terms were negotiated by the Debtors and the Purchaser in good faith and at arms-length.

G.      The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Purchased Assets.

H.      The Debtors have demonstrated that the Break-Up Fee and Expense Reimbursement are actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, and of substantial benefit to the Debtors' estates by inducing the Purchaser's bid, which has established a bid standard or minimum for other bidders for the Purchased Assets, thereby ensuring that during the Auction, if any, the Debtors receive the highest or best bid possible for the Purchased Assets.

I.      Nothing contained herein or in the Stalking Horse Purchase Agreement or documents related thereto, nor the entry of this Bidding Procedures Order or the Debtors' entry into the Stalking Horse Purchase Agreement or documents related thereto (i) shall constitute a Prepayment Event  or require the Debtors to pay any other fee and/or penalty under that certain Loan Agreement dated as of August 16, 2012 between A123 Systems, Inc. and Wanxiang America Corporation or (ii) require payment of a "Termination Fee"  or any other fee and/or penalty under that certain Securities Purchase Agreement between A123 Systems, Inc. and Wanxiang Clean Energy USA Corp.

J.      The Notice of Auction and Sale Hearing is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including, without limitation:  (i) the date, time and place of the Auction (if one is held); (ii) the Bidding

Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the sale

motion and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of

the Purchased Assets; (v) instructions for promptly obtaining a copy of the Stalking Horse

Purchase Agreement; (vi) representations describing the Sale as being free and clear of liens,

claims, interests and other encumbrances, with all such liens, claims, interests and other

encumbrances attaching with the same validity and priority to the sale proceeds; (vi) the

commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors; and

(vii) notice of the proposed assumption and assignment of contracts and leases to the Stalking

Horse Bidder pursuant to the Stalking Horse Purchase Agreement (or to another Successful

Bidder arising from the Auction, if any), the proposed cure amounts relating thereto and the

right, procedures and deadlines for objecting thereto, and no other or further notice of the Sale

shall be required.

K.      The entry of this Bidding Procedures Order is in the best interests of the

Debtors, their estates, their creditors, and other parties-in-interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.      All Objections to the Motion or the relief provided herein that have not

been withdrawn, waived or settled, and all reservations of rights included therein, hereby are

overruled and denied on the merits.

3.      The Bidding Procedures, in substantially the form attached hereto as

Schedule 1, are incorporated herein and approved, and shall apply with respect to the sale of the

Purchased Assets. The Debtors are authorized to take all actions necessary or appropriate to

implement the Bidding Procedures.

## I.    **Important Dates and Deadlines**

4.    **Bid Deadline**.  As further described in the Bidding Procedures, the deadline for submitting bids for the Purchased Assets (the "**Bid Deadline**") is November 16, 2012 at 5:00 p.m. (prevailing Eastern Time).  No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) unless such bid meets the requirements set forth in the Bidding Procedures.

5.    **Auction**.  The Debtors may sell the Purchased Assets, or additional assets of the Debtors if such acquisition is proposed by any Qualified Bid, by conducting an Auction in accordance with the Bidding Procedures.  If Qualified Bids are timely received by the Debtors in accordance with the Bidding Procedures, the Auction shall take place on November 19, 2012 at 11:00 a.m. (prevailing Eastern Time) at the offices of Latham & Watkins, LLP, co-counsel to the Debtors at 233 South Wacker Drive, Suite 5800, Chicago, IL, 60606.  If, however, no other Qualified Bid is received by the Bid Deadline, then the Auction will not be held and the Debtors shall promptly seek Bankruptcy Court approval of the Stalking Horse Purchase Agreement.  Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

6.    **Sale Hearing**.  The Sale Hearing shall be held before this Court on November 26, 2012 at [          ] (prevailing Eastern Time) before the Honorable Judge Carey, United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware, at 824 North Market Street, 5th Floor, Wilmington, Delaware 19801.  At the Sale Hearing, the Debtors will seek the entry of an order of this Court approving and authorizing the Sale to the Stalking Horse Bidder or the Successful Bidder (if other than the Stalking Horse Bidder), as applicable.  Any obligations of the Debtors set forth in the Stalking Horse Purchase Agreement that are

intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse Purchase Agreement are authorized as set forth herein and are fully enforceable as of the date of entry of this Order. **Please take notice that:** the Sale Hearing (or any portion thereof) may be adjourned by this Court or the Debtors from time to time without further notice other than by announcement in open court, on this Court's calendar or through the filing of a notice or other document on this Court's docket.

7. **Sale Objection Deadline**. The deadline to object to the relief requested in the Motion, including entry of the proposed Sale Order (the "**Sale Objection Deadline**") is [                    ], 2012 at 4:00 p.m. (prevailing Eastern Time). Objections, if any, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with this Court and served so *actually received* no later than the Sale Objection Deadline on the following parties (the "**Notice Parties**"): (a) the Debtors, c/o A123 Systems, Inc., 200 West Street, Waltham, MA 02451 (Attn: David Vieau); (b) co-counsel to the Debtors, (i) Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800, Chicago, IL 60606 (Attn: Caroline Reckler, Esq.) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, DE 19899 (Attn: Mark D. Collins, Esq.); (c) counsel to the official committee of unsecured creditors, if one is appointed; (d) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington DE 19801, (Attn: Mark Kenney); and (e) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019 (Attn: Joshua A. Feltman, Esq. and David K. Lam, Esq.), counsel to the Purchaser.

8.       On or before five (5) business days after entry of this Bidding Procedures Order, the Debtors will cause (A) the notice, substantially in the form attached hereto as Schedule 2 (the "**Notice of Auction and Sale Hearing**"), and the Bidding Procedures Order to be sent by first-class mail postage prepaid, to the following:  (a) the U.S. Trustee; (b) counsel for the official committee of unsecured creditors (the "**Committee**"); (c) counsel to the agents for the Debtors' prepetition secured lenders; (d) counsel to the Agent for the DIP Lenders; (e) all taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (f) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (g) all persons known or reasonably believed to have asserted an interest in any of the Purchased Assets; (h) the non-Debtor parties to the Contracts or Leases; (i) all Persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Purchased Assets within the last six months; (j) the Attorneys General in the State(s) where the Purchased Assets are located; (k) the Environmental Protection Agency; (1) all state and local environmental agencies in any jurisdiction where the Seller owns or has owned or used real property; (m) counsel to the Purchasers and (n) all other known creditors of the Debtors.[3]  In addition to the foregoing, (i) electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing also will be posted on:  (a) the Court's website, www.deb.uscourts.gov; and (b) the case website maintained by the Debtors' claims and noticing agent, Logan & Company, Inc. at www.loganandco.com; and (ii) on or before three (3) business days after entry of the Bidding Procedures Order, the Debtors will: (a) serve the Notice of Auction and Sale Hearing on all known creditors of the Debtors; and

---

[3]       The Notice of Auction and Sale Hearing will direct parties to contact Lazard Freres & Co., investment banker for the Debtors, for more information and will provide that any party in interest that wishes to obtain a copy of any related document (including the Stalking Horse Purchase Agreement), subject to any necessary confidentiality agreement, may make a request in writing as specified in the Notice of Auction and Sale Hearing.

(b) subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing once in one national publication the Debtors deem appropriate.  **The failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order and/or consummation of the Sale, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto**.

9.     On or before two (2) business days after the entry of the Bidding Procedures Order (the "**Initial Cure Notice Deadline**"), the Debtors shall serve by first class mail or hand delivery, a notice of potential assumption, assignment and/or transfer of the executory contracts and leases to which any Debtor is a party (the "**Contracts and Leases**"), substantially in the form attached hereto as <u>Schedule 3</u> (the "**Notice of Potential Assumption and Assignment**"), on all non-debtor parties to the Contacts and Leases.  The Notice of Potential Assumption and Assignment shall include the calculation of the cure amounts that the Debtors believe must be paid to cure all defaults outstanding under the Contracts and Leases as of such date (the "**Cure Amounts**").  In addition, if the Debtors identify additional Contracts or Leases not set forth in the original Notice of Potential Assumption and Assignment, the Debtors shall promptly send a supplemental notice (a "**Supplemental Notice of Potential Assumption and Assignment**") to the applicable counterparties to such additional Contracts or Leases.

10.     Unless the non-debtor party to an Assumed Contract or Assumed Lease files an objection (the "**Cure Amount/Assignment Objection**") to (a) its scheduled Cure Amount, and/or (b) the proposed assumption, assignment and/or transfer of such Contract or Lease (including the transfer of any related rights or benefits thereunder) to the Purchaser or to any Successful Bidder, as applicable by the later of (i) 5:00 p.m.  (prevailing Eastern Time) on

November 16, 2012, and (ii) ten (10) days after service of the Supplemental Notice of Potential

Assumption and Assignment, if applicable (collectively, the "**Cure/Assignment Objection**

**Deadline**") and serves a copy of the Cure Amount/Assignment Objection so as to be received no

later than the Cure/Assignment Objection Deadline on the same day to the Notice Parties; then

such non-debtor party will (i) be forever barred from objecting to the Cure Amount and from

asserting any additional cure or other amounts with respect to such Contract or Lease in the event

it is assumed and/or assigned by the Debtors and the Debtors shall be entitled to rely solely upon

the Cure Amount, and (ii) be deemed to have consented to the assumption, assignment and/or

transfer of such Contract or Lease (including the transfer of any related rights and benefits

thereunder) either to the Purchaser or a Purchaser Designee, or any other Successful Bidder or

any other assignee of the relevant Assumed Contract or Assumed Lease and shall be forever

barred and estopped from asserting or claiming against the Debtors, the Purchaser, the Purchaser

Designee, or any other Successful Bidder or any other assignee of the relevant Contract or Lease

that any additional amounts are due or defaults exist, or conditions to assumption, assignment,

and/or transfer must be satisfied under such Contract or Lease, or that any related right or benefit

under such Contract or Lease cannot or will not be available to the Purchaser or Purchaser

Designees or any other Successful Bidder or any other assignee of the relevant Contract or

Lease.  Cure Amount/Assignment Objections with respect to any Notice of Potential Assumption

and Assignment of Agreements that is served on or before the Initial Cure Notice Deadline, shall

be heard on [November 19, 2012][4] at [                    ] (prevailing Eastern Time), unless the

Debtors, the Committee and the Purchaser agree otherwise or the Court orders otherwise.  With

respect to any party who has timely filed a Cure Amount/Assignment Objection in accordance

---

[4] Cure objections to be heard at least one Business Day prior to Auction

with this Order, nothing in this Order and/or any applicable Notice of Potential Assumption and Assignment of Agreements shall (i) operate to waive or impair any rights, claims or defenses of any and all non-debtor counterparties to any Contract or Lease, or (ii) shall be deemed to be a determination, finding or adjudication that any Contract or Lease, or any rights or benefits thereunder, are or may be assumed, assigned, transferred, delegated or otherwise made available for the benefit of any entity, pursuant to section 365 of the Bankruptcy Code or otherwise, without the consent of the non-debtor counterparty to such Contract or Lease.

11.     No later than ten (10) days prior to Closing (the "**Assumption Notice Deadline**"), the Debtors shall serve a notice, identifying Successful Bidder and stating which Contracts and Leases will be assumed and assigned (the "**Assumed Contracts and Assumed Leases**") to the Successful Bidder as of the Closing (the "**Assumption Notice**").  Notwithstanding anything in the Stalking Horse Purchase Agreement to the contrary, the Successful Bidder shall not have the right to designate additional Assumed Contracts and Assumed Leases to be assumed and assigned at Closing following the Assumption Notice Deadline; provided, however, that the Successful Bidder may designate additional Assumed Contracts and Assumed Leases to be assumed and assigned following the date of the Closing and following a ten (10) day period from the date of service of subsequent Assumption Notice relating to such Assumed Contracts and Assumed Leases.

12.     If an objection challenges a Cure Amount, the objection must set forth the prepetition cure amount being claimed by the objecting party (the "**Claimed Cure Amount**") with appropriate documentation in support thereof.  Upon receipt of an objection to a Cure Amount, the Debtors may, in their sole discretion, hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the Debtors and the

objecting party.  If the Debtors hold the Claimed Cure Amount in reserve, the Debtors may

assume and assign the Assumed Contract that is the subject of an objection relating to that

Assumed Contract's Cure Amount without further delay, unless such Cure Amount/Assignment

Objection claims that the applicable Assumed Contract or Assumed Lease may not be assumed

or assigned for reasons other than or in addition to the adequacy or inadequacy of the Cure

Amount.

13.     Upon a determination by the Debtors made in accordance with the

Stalking Horse Purchase Agreement that a Contact or Lease should be rejected, the Debtors shall

serve by first class mail or hand delivery, a notice, substantially in the form attached hereto as

Schedule 4 (the "**Notice of Rejection**"), of rejection of such Contracts and Leases on all non-

debtor parties to such Contracts and Leases.  Such Contracts and Leases shall be rejected ten (10)

days from the date of service of such Notice of Rejection.

14.     The Debtors, the Purchaser, or the other Successful Bidder, as the case

may be, may determine to exclude any Assumed Contract or Assumed Lease (an "**Excluded**

**Contract**") from the list of Purchased Assets at any time prior to the consummation of the Sale.

The non-debtor party or parties to any such Excluded Contract will be notified of such exclusion

by written notice as soon as practicable after such determination, which may be after the Sale

Hearing.

15.     In the event that the Purchaser is not the Successful Bidder for the

Purchased Assets and for those Assumed Contracts and Assumed Leases identified in the Notice

of Assumption and Assignment, within one (1) business days after the conclusion of the Auction

for the Purchased Assets, the Debtors will serve a notice identifying the Successful Bidder to the

non-debtor parties to the Assumed Contracts and Assumed Leases that have been identified in such Successful Bid.

16.    The Notice of Auction and Sale Hearing, the Notice of Assumption and Assignment, and the Notice or Rejection to be issued in connection with the proposed sale of the Purchased Assets, substantially in the forms annexed hereto as <u>Schedule 2</u>, <u>Schedule 3</u>, and <u>Schedule 4</u> respectively, are approved.

17.    The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties-in-interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

18.    The Break-Up Fee and Expense Reimbursement, as set forth in the Stalking Horse Purchase Agreement, are approved.  The obligations of Debtors to pay the Break-Up Fee and Expense Reimbursement:  (i) shall be entitled to administrative expense claim status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; (ii) shall not be subordinate to any other administrative expense claim against the Debtors (other than any super-priority claim granted under the DIP Order, any carve-out for professional fees and expenses included in the DIP Order, or any adequate protection order in existence as of the date hereof); (iii) shall survive the termination of the Stalking Horse Purchase Agreement; and (iv) payable at the times set forth in the Stalking Horse Purchase Agreement.

19.    Except as otherwise provided herein and in the Bidding Procedures, Local Rule 6004-1(c)(ii) is waived.

20.    Except as otherwise provided in the Stalking Horse Purchase Agreement, the Bidding Procedures or this Bidding Procedures Order, the Debtors (in consultation with the Committee) reserve the right as they may reasonably determine to be in the best interests of their

estates, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (c) remove some of the Purchased Assets from the Auction (with the consent of Purchaser); (d) waive terms and conditions set forth herein with respect to all potential bidders; (e) impose additional terms and conditions with respect to all potential bidders; (f) extend the deadlines set forth herein; (g) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (h) modify the Bidding Procedures as the Debtors (after consultation with the Committee) may determine to be in the best interest of their estates or to withdraw the Motion at any time with or without prejudice; provided that without the consent of the Purchaser, the Debtors may not: (i) waive any conditions to a bid being a Qualified Bid (which consent from the Purchaser to such waiver not to be unreasonably withheld), (ii) impair or modify the Purchaser's rights and obligations under the Bid Procedures or under the Purchase Agreement, including Purchaser's rights with respect to the timing of the Auction and the Sale Hearing, or the Purchaser's right to credit the Break-Up Fee and Expense Reimbursement as party of any subsequent bids.

21.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and Bidding Procedures Order shall be effective immediately upon its entry.

22.     This Court shall retain jurisdiction over any matters related to or arising

from the implementation of this Order.


Dated: Wilmington, Delaware

_____, 2012



_____
THE HONORABLE KEVIN J. CAREY,
UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1

BIDDING PROCEDURES

## BIDDING PROCEDURES

By a motion dated October 16, 2012 (the "**Motion**"), A123 Systems, Inc. and certain of its subsidiaries, as debtors and debtors in possession (collectively, the "**Debtors**") sought, among other things, approval of the procedures related to the proposed sale of the Purchased Assets (as defined in the Stalking Horse APA (as defined below)). On October [  ], 2012, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") entered an order (the "**Sale Procedures Order**") authorizing the Debtors to market the Purchased Assets through, among other means, the bidding procedures described below (the "**Bidding Procedures**"). As part of the Bidding Procedures, the Bankruptcy Court has scheduled a hearing to consider approval of the sale of the Applicable Assets (as defined below) to the Successful Bidder (as defined below), to be conducted on [  ], 2012, at [      ] (prevailing Eastern Time), in [        ] at the Bankruptcy Court, before [            ] (the "**Sale Hearing**"). Please note that all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stalking Horse APA.

## I.     Stalking Horse Bid

The Debtors have executed an Asset Purchase Agreement (collectively with all ancillary documents and agreements, the "**Stalking Horse APA**") with Johnson Controls, Inc., as purchaser (the "**Stalking Horse Bidder**"), dated as of October 16, 2012, which contemplates a set of related transactions (collectively, the "**Sale Transaction**") for the sale of the Purchased Assets to the Stalking Horse Bidder in consideration for the Purchase Price (as defined in the Stalking Horse APA), all subject to the terms and conditions set forth in the Stalking Horse APA.

## II.    Important Dates for Potential Competing Bidders

These Bidding Procedures provide for an opportunity for interested parties to qualify and participate in the Auction (as defined below) and submit competing bids for all or a portion of the Purchased Assets, together with such other assets of the Debtors as Qualified Bidders may seek to purchase (such assets collectively, as to any Qualified Bidder, the "**Applicable Assets**"). The Debtors shall, in consultation with the Committee (as defined below):

(a)     accept Bids (as defined below) until the Bid Deadline (as defined below); and

(b)     assist Potential Bidders (as defined below) in conducting their respective due diligence investigations until the day of the Auction (as defined below) (in the case of Potential Bidders who become Qualified Bidders by the Bid Deadline) or the Bid Deadline (in the case of Potential Bidders who are not Qualified Bidders as of the Bid Deadline) and conduct an auction (the "**Auction**") among Qualified Bidders (as defined below) on [November 19, 2012] to identify the Successful Bid (as defined below).

## III.   Assets to Be Sold

The Debtors seek to sell certain of the Debtors' assets, defined as the "Purchased Assets" in Section 2.1 of the Stalking Horse APA, and the Applicable Assets (as defined below) to the maximum extent permitted by Section 363 of the Bankruptcy Code, including the Assumed Contracts and Assumed Leases (as such terms are defined in the Stalking Horse APA), together

with such other assets as any Qualified Bidder may seek to purchase at the Auction, free and clear of any and all Claims (as defined below) subject to certain conditions.

## IV.    <u>The Bidding Process</u>

The Debtors shall (in consultation with the Committee):  (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Purchased Assets and any other Applicable Assets; (b) determine whether any person or entity is a Qualified Bidder (as defined below); (c) receive and evaluate bids from Qualified Bidders; and (d) administer the Auction.  The foregoing activities are referred to, collectively, as the "**<u>Bidding Process</u>**."  Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person or entity that is not a Potential Bidder (or their legal counsel and financial advisors) and the Debtors and their representatives shall use good faith efforts to provide all Potential Bidders with substantially similar access and information.

Any person or entity who wishes to participate in the Bidding Process must meet the participation requirements for Potential Bidders below and must thereafter submit a Qualified Bid to become a Qualified Bidder.

## V.    <u>Participation Requirements</u>

To participate in the Bidding Process, each interested person or entity must deliver the following documents to the parties set forth below (the "**<u>Participation Materials</u>**") at least [ ] days before the Bid Deadline (or such later date to which the Debtors consent, but in no event prior to the commencement of the Auction):

(a)    An executed confidentiality agreement in form and substance satisfactory to the Debtors (to the extent such entity is not already party to a confidentiality agreement with the Debtors);

(b)    A statement demonstrating to the Debtors' satisfaction a *bona fide* interest in purchasing all or a portion of the Applicable Assets from the Debtors;

(c)    Current audited financial statements of (i) the Potential Bidder, or (B) if the Potential Bidder is an entity formed for the purpose of acquiring the Applicable Assets, current audited financial statements of the equity holder(s) of the Potential Bidder who shall either guarantee the obligations of the Potential Bidder or provide such other form of financial disclosure and credit-quality support information or enhancement reasonably acceptable to the Debtors and the Committee;

(d)    Written evidence of the Potential Bidder's commitment for debt or equity funding that is needed to close the contemplated transaction acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated transaction; provided however that the Debtors shall determine in their discretion and in consultation with their advisors whether the written evidence of such financial wherewithal is acceptable; and

(e)    Information that can be publicly filed and/or disseminated representing that the Potential Bidder has the financial wherewithal to satisfy adequate assurance requirements with

respect to the Assumed Contracts and Assumed Leases under the Bankruptcy Code, which information may be required to be supplemented at the request of the Debtors or other parties in interest.

The Participation Materials must be transmitted to each of the following parties (collectively, the "**Notice Parties**"):  (i) the Debtors, c/o A123 Systems, Inc., 200 West Street, Waltham, MA 02451 (Attn:  David Vieau); (ii) co-counsel to the Debtors, (a) Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800, Chicago, IL  60606 (Attn:  Caroline Reckler, Esq.) and (b) Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, DE 19899 (Attn:  Mark D. Collins, Esq.); (iii) financial advisors to the Debtors, Lazard Freres & Co. LLC, 190 S. LaSalle St., 31st Floor, Chicago, IL 60603 (Attn:  Tim Pohl) ("**Lazard**");  (iv) counsel to the official committee of unsecured creditors (the "**Committee**"), (a) [committee firm] (Attn:  [            ], Esq.), and (b) [committee co-counsel] (Attn:  [         ], Esq.) and (v) counsel to the Stalking Horse Bidder, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY  10019 (Attn:  Josh Feltman).

Any party that delivers the Participation Materials to the Notice Parties shall be a "**Potential Bidder**," and by delivering the Participation Materials each Potential Bidder acknowledges that its identity will be made public, including in court filings.  If the Debtors determine (in consultation with the Committee) that a Potential Bidder has a *bona fide* interest in all or a portion of the Applicable Assets, then promptly after such determination, the Debtors will deliver to the Potential Bidder:  (a) an electronic copy of the Stalking Horse APA; and (b) access information for a confidential electronic data room concerning the Applicable Assets and such other assets of the Debtors as the Debtors may determine (the "**Data Room**").

## VI.    Due Diligence

Until the day of the Auction (as defined below) or, if a Potential Bidder shall not have submitted a Qualifying Bid by the Bid Deadline, the Debtors will afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors determine in their discretion to be reasonable and appropriate under the circumstances.  All due diligence requests shall be directed to Lazard, as indicated above.  The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  If the Debtors determine that due diligence material requested by a Potential Bidder is reasonable and appropriate under the circumstances, but such material has not previously been provided to any other Potential Bidder or the Stalking Horse Bidder, the Debtors shall post such materials in the Data Room and provide email notice of such posting to all Potential Bidders and the Stalking Horse Bidder, as well as to the Notice Parties.

Unless otherwise determined by the Debtors, in consultation with the Committee, the availability of additional due diligence to a Potential Bidder will cease on the Auction date; provided, however, that the "Successful Bidder" and the Back-Up Bidder shall be permitted to continue to conduct due diligence until the closing of the Sale Transaction (subject to the terms of the Stalking Horse APA); provided, further, however, that a Qualified Bid shall not be subject to further due diligence after the Bid Deadline.   Except as provided above with respect to the copy of the Stalking Horse APA provided by the Debtors to the Potential Bidders, and information in the Data Room, neither the Debtors nor their representatives will be obligated to

furnish any information of any kind whatsoever relating to the Applicable Assets or any other assets of the Debtors to any party.

## VII.    Bid Deadline

A Potential Bidder that desires to make a bid shall deliver written and electronic copies of its bid to the Notice Parties so as to be received not later than 5:00 p.m. (prevailing Eastern Time), on [November 16, 2012], or such later date to which the Debtors consent, but in no event after commencement of the Auction (the "**Bid Deadline**").

## VIII.    Bid Requirements

To participate in the Auction, if any, a bidder must deliver to the Notice Parties a written offer, which must provide or otherwise comply with, at a minimum, the items noted below to be deemed a "Qualified Bid:"

(a)    The Potential Bidder offers to purchase all or a portion of the Purchased Assets from the Debtors, together with any other Applicable Assets, at the purchase price and upon the terms and conditions set forth in an executed purchase agreement, a clean copy of which shall be submitted, together with a marked copy showing any proposed changes to the Stalking Horse APA;

(b)    The bid is not subject to any due diligence or financing contingency, is not conditioned on bid protections, is not subject to any corporate (board, shareholder, or similar) consent or approval, or any regulatory contingencies (other than a condition that any applicable waiting period required for any regulatory approval shall have expired or have been terminated and required authorization of any other governmental entity whose approval is identified by the Potential Bidder as required for the transaction as set forth in such Potential Bidder's bid shall have been obtained).  Any required governmental approvals identified by the Potential Bidder may impact the Debtors' evaluation of a Qualified Bid.

(c)    The purchase price in such bid is a higher and/or better offer for the Purchased Assets, or the applicable portion thereof (as compared to the offer of the Stalking Horse Bidder), and such offer shall not be considered a higher and/or better offer unless such bid provides for net consideration to the Debtors' estates of at least $10,250,000[1] more than that provided by the Stalking Horse Bidder, such amount to be deemed to include the amount of the Break-Up Fee and the Expense Reimbursement;

(d)    The bid is received by the Debtors by the Bid Deadline;

(e)    The bid does not entitle a bidder to any break-up fee, termination fee or similar type of payment or reimbursement and, by submitting a bid, the bidder waives the right to pursue a substantial contribution claim under 11 U.S.C, § 503 related in any way to the submission of its bid or the Bidding Procedures;

---

[1] Consists of $3.75mm break fee (3% of $125mm), $4.0mm estimated expenses and $2.5mm overbid

(f)     The bid is accompanied by a cash deposit in the amount of 10% of the purchase price of the bid;

(g)     The bid includes a comprehensive list of all executory contracts and leases that the Qualified Bidder proposes to assume and the corresponding cure amounts associated with the assumption and assignment of such leases and contracts; and

(h)     The bid demonstrates the Qualified Bidder's ability to provide adequate assurance of future performance under any executory contracts or unexpired leases to be assumed and/or assigned pursuant to such bid.

A Potential Bidder shall accompany its bid with:  (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment if selected as the Successful Bidder and such other evidence of ability to consummate the Sale Transaction as the Debtors, in consultation with the Committee, may request; (b) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed; and (c) any pertinent factual information regarding the Potential Bidder's operations that would assist the Debtors in their analysis of issues arising with respect to any applicable antitrust laws, governmental regulatory approvals, national security laws, foreign investment laws or other aspects of the bid and with respect to any conditions contained in the bid.

A bid received from a Potential Bidder will only be considered if it meets the above requirements (with such immaterial variations as the Debtors shall permit in their discretion), and shall constitute a "Qualified Bid" only if the Debtors believe in their discretion that such Bid would be consummated if selected as the Successful Bid.  Each Potential Bidder that is determined to have submitted a Qualified Bid will be considered a "**Qualified Bidder.**" For purposes hereof, the Stalking Horse Bidder constitutes a Qualified Bidder and the Stalking Horse APA executed by the Stalking Horse Bidder is a Qualified Bid.  A Qualified Bid will be valued based upon factors such as:  (a) the purported amount of the Qualified Bid, including any benefit to the Debtors' bankruptcy estates from any assumption of liabilities of the Debtors; (b) the fair value to be provided to the Debtors under the Qualified Bid; (c) the length of time expected to close the proposed Sale Transaction including the necessary time to obtain necessary approval; (d) the ability to obtain all necessary antitrust, governmental, national security, foreign investment or other regulatory approvals for the proposed transaction; and (e) any other factors the Debtors may deem relevant.  Within one day after the Debtors, in consultation with the Committee, determine that a bid is a Qualified Bid, the Debtors shall distribute a copy of such bid to counsel to the Stalking Horse Bidder by e-mail, hand delivery or overnight courier. The Debtors, in consultation with the Committee, may reject any bid if, among other things, the Debtors determine such bid:

(i)     is on terms that are in their totality materially more burdensome or conditional than the terms of the Stalking Horse APA; or

(ii)     includes a non-cash instrument or similar consideration; provided, however, that if a Qualified Bid provides cash consideration in excess of the Debtors'

secured indebtedness, such Qualified Bid shall not be rejected due to its inclusion of non-cash consideration.

Any bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid.

## IX.    **The Auction**

In the event that the Debtors receive one or more Qualified Bids (other than the bid of the Stalking Horse Bidder), the Debtors will hold an auction (the "**Auction**") on [November 19, 2012], commencing at [          ] (prevailing Eastern Time) at the offices of Latham & Watkins LLP, co-counsel to the Debtors, at 233 South Wacker Drive, Suite 5800, Chicago, IL  60606, for consideration of the Qualified Bids, each as may be increased at such Auction.  Bidding will start at the highest Qualified Bid and will continue with minimum bid increments of $500,000, subject to the right of the Stalking Horse Bidder to credit the Break-Up Fee and Expense Reimbursement (as defined in the Stalking Horse APA) to its bid at each round of bidding. The Auction shall run in accordance with the following procedures:

(a)    Only the Debtors and their representatives, proper representatives of statutorily appointed committees, the Stalking Horse Bidder and any other Qualified Bidder that has timely submitted a Qualified Bid, shall attend the Auction in person, and only the Stalking Horse Bidder and such other Qualified Bidders will be entitled to make any subsequent bids at the Auction.

(b)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale by the Debtors of the Purchased Assets or any other Applicable Assets.

(c)    At least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and the Back-Up Bidder (as defined below).  Prior to the commencement of the Auction, the Debtors will provide notice of the Qualified Bid which the Debtors believe, in their reasonable business judgment (in consultation with the Committee), is the highest or otherwise best offer(s) (the "**Starting Bid(s)**") to the Stalking Horse Bidder and all other Qualified Bidders which have informed the Debtors of their intent to participate in the Auction.

(d)    All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.  All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

(e)     The Debtors (in consultation with the Committee) may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (1) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court or any other applicable court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction.

(f)     The Debtors reserve their right, in their reasonable business judgment to make one or more adjournments of the Auction to, among other things: (A) facilitate discussions between the Debtors and the Qualified Bidders, (B) allow individual Qualified Bidders to determine how they wish to proceed, (C) consider and determine the current highest and best Subsequent Bid(s) at any given time during the Auction, (D) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder (other than the Stalking Horse Bidder) has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Subsequent Bid amount.

(g)     Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "**Subsequent Bid**") and (ii) the Debtors determine, in consultation with the Committee, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid(s), and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid(s) (as defined below). Each Subsequent Bid at the Auction shall provide net value to the estate of at least U.S. $500,000 over the Starting Bid(s) or the Leading Bid(s), as the case may be, which net value may be in the form of cash or non-cash consideration (any such non-cash consideration to be valued in the discretion of the Debtors, in consultation with the Committee). After the first round of bidding and between each subsequent round of bidding, the Debtors (after consultation with the Committee) shall announce the bid or bids that it believes to be the highest or otherwise better offer (the "**Leading Bid(s)**"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid(s) with full knowledge of the Leading Bid. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Stalking Horse Bidder), the Debtors will, at each round of bidding, give effect to the Break-Up Fee that may be payable to the Stalking Horse Bidder under the Stalking Horse APA, and take into account any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtors by such Qualified Bid.

## X.    The Successful Bid(s)

Immediately at the conclusion of the Auction, the Debtors shall, in consultation with the Committee (a) determine, consistent with the Bidding Procedures, which bid or bids collectively constitute the highest and best bid (such bid(s), the "**Successful Bid(s)**") and (b) communicate to the Stalking Horse Bidder and the other Qualified Bidders the identity of the Successful Bidder(s) and the details of the Successful Bid(s). At such time, the Debtors shall, in consultation with the Committee, also determine which bid or bids collectively constitute the

second highest and best bid or bids collectively, and may, in their discretion, deem such second highest and best bid or bids collectively a back up bid (such bid or bids, the "**Back Up Bid(s)**" and the party(ies) submitting the Back-Up Bid(s), the "**Back-Up Bidder(s)**") and communicate to the Stalking Horse Bidder and other Qualified Bidders the identity of the Back Up Bidder(s) and the details of the Back Up Bid(s).  In no circumstances shall the Stalking Horse Bidder be required to be a Back Up Bidder.  If no Qualified Bids are received other than the Stalking Horse APA, the Stalking Horse APA shall be designated as the Successful Bid, and there shall be no Auction.  The bidder or bidders collectively making the Successful Bid(s) is referred to as the "**Successful Bidder(s).**"  The determination of the Successful Bid(s) and the Back Up Bid(s) by the Debtors at the conclusion of the Auction, in consultation with the Committee, shall be final subject to approval by the Bankruptcy Court.  If the Successful Bid(s) is terminated or fails to close within the time period specified in the Successful Bid(s), the Debtors shall, in consultation with the Committee, be authorized, but are not required, to consummate the Sale Transaction with the Back Up Bidder(s) without further order of this Court.  The Back Up Bid(s) shall remain open until the earlier of (x) the first business day following the consummation of the sale of the Purchased Assets and/or any other Applicable Assets to the Successful Bidder(s) and (y) the twentieth (20th) day after entry of the Sale Order.  The Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid(s) at the Auction; (ii) definitive documentation has been executed in respect thereof; and (iii) the Court has entered an order approving such Successful Bid(s); provided, under no circumstances shall the Debtors consider any bid made after the conclusion of the Auction.

EACH QUALIFIED BID SUBMITTED (OTHER THAN THE STALKING HORSE APA, WHICH MAY BE TERMINATED IN ACCORDANCE WITH ITS TERMS) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE QUALIFIED BIDDER FROM THE TIME THE BID IS SUBMITTED UNTIL THE ENTRY OF THE SALE ORDER.  THE BACK UP BID(S) SHALL BE IRREVOCABLE AND BINDING ON THE BIDDER UNTIL THE EARLIER OF ONE (1) BUSINESS DAYS AFTER THE CLOSING OF THE SALE OF THE APPLICABLE ASSETS OR TWENTY (20) DAYS AFTER THE SALE ORDER IS ENTERED.  ALL QUALIFIED BIDDERS AT THE AUCTION SHALL BE DEEMED TO HAVE CONSENTED TO THE JURISDICTION OF THE BANKRUPTCY COURT AND WAIVED ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTES RELATING TO THE AUCTION, AND THE CONSTRUCTION AND ENFORCEMENT OF ANY SALE TRANSACTION DOCUMENTS

## XI.    **The Sale Hearing**

The Successful Bid(s) will be presented to the Bankruptcy Court for approval at the Sale Hearing.  If no other Qualified Bid is received by the Debtors and the Stalking Horse Bidder's original Stalking Horse APA is the Successful Bid, then the Debtors will seek entry of an order at the Sale Hearing authorizing and approving the Sale Transaction, including the sale of the Purchased Assets to the Stalking Horse Bidder, pursuant to the terms and conditions set forth in the Stalking Horse APA.  If a different bid is the Successful Bid(s), then the Debtors anticipate that they will seek the entry of an order, modified as necessary to reflect the terms of the Successful Bid(s), authorizing and approving the sale of the Applicable Assets to the Successful Bidder(s).

Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on all matters relating to the proposed sale, and parties shall be prepared to present their evidence in support of or in opposition to the proposed sale at the Sale Hearing; *provided however*, that issues relating to the assumption and assignment of executory contracts and unexpired leases may be addressed at separate hearings before the Bankruptcy Court.

## XII.    "As Is Where Is"

The Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or their estates, except to the extent expressly set forth in the purchase agreement corresponding to the Successful Bid(s), as the case may be.  Except as otherwise provided in the Successful Bid(s) or such other bid which may ultimately be consummated, all of the Debtors' right, title and interest in and to the Applicable Assets shall be sold free and clear all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests, liabilities, leasehold interests and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Applicable Assets, all as more specifically set forth and defined in the Sale Motion and the proposed order approving the Sale Transaction (the "**Claims**"), and as set forth in the Stalking Horse APA and the Sale Order, with such Claims to attach to the net proceeds of the sale with the same validity and priority as such Claims applied against the Applicable Assets.  The Stalking Horse Bidder and each Qualified Bidder shall be deemed to acknowledge and represent that it had an opportunity to conduct any and all due diligence regarding the Applicable Assets prior to making its offer, that it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Applicable Assets in making its Qualified Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Applicable Assets, or the completeness of any information provided in connection therewith or the Auction except as expressly stated in these Bidding Procedures, and (a) as to the Stalking Horse Bidder, the terms of the sale of the Purchased Assets set forth in the Stalking Horse APA, or (b) as to any other Successful Bidder, the terms of the sale of the Applicable Assets set forth in the applicable purchase agreement.

Notwithstanding the foregoing, the Debtors reserve the right to contest the validity, nature, extent or priority of and/or seek to set aside or avoid any and all Claims under applicable law.

## XIII.    Return of Deposits

A Deposit submitted by the Back Up Bidder(s) will be held by the Debtors until forty eight (48) hours after the Back Up Bid(s) has been terminated in accordance with the Bid Procedures.  As to all other bidders (except the Successful Bidder), Deposits will be returned promptly after conclusion of the Sale Hearing.  Other than with respect to the Deposit of the Stalking Horse Bidder, which shall be governed by the Stalking Horse APA, if the Successful Bidder(s) or the Back Up Bidder(s) fails to consummate an approved sale because of a breach or

9

failure to perform on the part of the Successful Bidder(s) or the Back Up Bidder(s), the Debtors shall be entitled to retain the Deposit in partial satisfaction of any damages resulting from the breach or failure to perform by the Successful Bidder(s) or the Back Up Bidder(s), without prejudice to any other rights the Debtors may have.  The Debtors may, in consultation with the Committee, credit the Deposit of the Successful Bidder(s) or the Back Up Bidder(s) towards the purchase price on the closing of the sale of the Applicable Assets.

## XIV.    <u>Reservation of Rights</u>

Except as otherwise provided in the Stalking Horse APA or the Bidding Procedures Order, the Debtors (in consultation with the Committee as further set forth herein) reserve the right as they may reasonably determine to be in the best interests of their estates, to:  (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates, (vi) waive terms and conditions set forth herein with respect to all Potential Bidders; (vii) impose additional terms and conditions with respect to all Potential Bidders ; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x) modify the Bidding Procedures as it may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice; <u>provided</u>, that without the consent of the Stalking Horse Bidder, the Debtors may not:  (a) waive any conditions to a bid being a Qualified Bid set forth in Article VIII above (which consent from the Stalking Horse Bidder to such waiver not to be unreasonably withheld), (b) impair or modify the Stalking Horse Bidder's rights and obligations hereunder or under the Stalking Horse APA, including the Stalking Horse Bidder's rights with respect to the timing of the Auction and the Sale Hearing, or the Stalking Horse Bidder's right to credit the Break-Up Fee and Expense Reimbursement as part of any Subsequent Bids.

.

## **SCHEDULE 2**

NOTICE OF AUCTION AND SALE HEARING

[TO COME]

## **SCHEDULE 3**

NOTICE OF ASSUMPTION AND ASSIGNMENT

[TO COME]

## **SCHEDULE 4**

NOTICE OF REJECTION

[TO COME]