UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

———————————————————x
In re: : Chapter 11
:
A123 SYSTEMS, INC., et al., : Case No. 12-12859 (KJC)
:
Debtors. : Jointly Administered
:
: Hearing Date: 11/8/12 at 10:00 a.m. (EST)
:
———————————————————x

**OPPOSITION TO MOTION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 362 EXTENDING THE AUTOMATIC STAY TO CERTAIN LITIGATION AGAINST NON-DEBTOR DEFENDANTS**

Lead Plaintiff Suk Cheung and Plaintiffs Scott Heiss and Michael Zoitas (collectively, "Plaintiffs"), on behalf of the putative class in *In re A123 Systems, Inc. Securities Litigation*, No. 12-10591 (D. Mass.) (the "Class Action"), submit this opposition to the motion (the "Motion" or "Mot.") of A123 Systems, Inc. ("A123 Systems" or the "Company") and certain of its subsidiaries (collectively, the "Debtors") for an order pursuant to Sections 105(a) and 362 of Title 11 of the United States Code (the "Bankruptcy Code") extending the automatic stay to bar litigation against certain of A123 Systems' current or former officers who are defendants in the Class Action. *See* Motion (ECF No. 121).[1]

**PRELIMINARY STATEMENT**

1.  On April 2, 2012, Plaintiffs filed the Class Action in the District of Massachusetts asserting securities fraud claims against A123 Systems and three of its current or former officers arising from their alleged misstatements and material omissions regarding the Company's

---

[1] Unless otherwise stated, all references to "ECF No. __" refer to documents filed in the instant bankruptcy proceeding.

financial condition. *See generally* Consolidated Amended Complaint, Young Decl. Ex. A.[2] On October 1, 2012, A123 Systems and the individual defendants moved to dismiss the Class Action. *See* Motion to Dismiss, *In re A123 Sys., Inc. Sec. Litig.*, No. 12-10591 (D. Mass.) (ECF No. 37). Plaintiffs must oppose the motion to dismiss on or before December 5, 2012. By application of the Private Securities Law Reform Act, "all discovery and other proceedings [are] stayed during the pendency of [the] motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B).

2. On October 16, 2012, Debtors filed voluntary petitions for bankruptcy in this Court pursuant to Chapter 11 of the Bankruptcy Code. *See* Chapter 11 Voluntary Petition (ECF No. 1). The automatic stay thus bars Plaintiffs from prosecuting their claims against A123 Systems, which is the only Debtor that is a Defendant in the Class Action. *See* 11 U.S.C. § 362(a).

3. Debtors urge that the stay should be extended to apply to Plaintiffs' claims against the non-debtor individuals also named as Defendants in the Class Action. Specifically, Debtors contend that the stay should also apply to Plaintiffs' claims against David P. Vieau, the Company's chief executive officer; David J. Prystash, the Company's chief financial officer; and John R. Granara III, the Company's former chief financial officer (collectively, the "Individual Defendants") for violation of Sections 10(b) and 20(a) of the Exchange Act. *See* Consolidated Amended Complaint, Young Decl. Ex. A. As discussed below, Debtors' Motion should be denied for three reasons.

4. *First*, Debtors have not demonstrated that the Class Action will interfere with their reorganization efforts. Mot. at ¶¶ 15-16. The Class Action is at the pleading stage, and discovery remains stayed during the pendency of the motion to dismiss, which is not even fully

---

[2] Citations to "Young Decl." refer to the Declaration of Jennifer L. Young submitted herewith.

briefed and will likely remain *sub judice* for months. Moreover, non-debtor Mr. Granara is not even currently employed by A123 Systems, so Debtors cannot demonstrate that he is involved in the reorganization efforts.

5. *Second*, Debtors fail to demonstrate that the Class Action would implicate indemnification and insurance obligations affecting property of the estate. Mot. at ¶ 18. Debtors have not disclosed the documents giving rise to these purported obligations, making it impossible to perform the fact-specific analysis required by Third Circuit authority.

6. *Third*, Debtors erroneously assert that they will be collaterally estopped by any rulings in the Class Action if Plaintiffs are permitted to proceed against the Individual Defendants. Mot. ¶¶ 21-22. To the contrary, Third Circuit authority holds that the automatic stay protects Debtors from collateral estoppel.

## ARGUMENT

### No Unusual Circumstances Exist to Warrant Extending the Automatic Stay to the Non-Debtor Individual Defendants

7. "In general, only the debtor is afforded the protections of the automatic stay under section 362 of the Bankruptcy Code; conversely, third-parties do not receive the protection of the automatic stay." *JNA-1 Corp. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*, 404 B.R. 767, 780 (Bankr. D. Del. 2009); *see also Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) ("Section 362 is rarely, however, a valid basis on which to stay actions against non-debtors."). "Nevertheless, courts may extend the automatic stay to non-debtor third-parties if 'unusual circumstances' are present." *Uni-Marts, LLC*, 404 B.R. at 780.

8. "Unusual circumstances" exist "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a

judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.* (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

9. Absent unusual circumstances, "the automatic stay is not available to non-bankrupt co-defendants of a debtor *even if they are in a similar legal or factual nexus with the debtor.*" *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991) (emphasis added). "In this regard, formal distinctions between debtor-affiliated entities are maintained when applying the stay. A proceeding against a non-bankrupt corporation is not automatically stayed by the bankruptcy of its principal, . . . and section 362 does not bar an action against the principal of a debtor-corporation." *Id.*

10. As discussed below, Debtors fail to demonstrate that "unusual circumstances" exist to warrant extending the automatic stay to the claims against the non-debtor Individual Defendants.

A. **Debtors Fail to Demonstrate that the Class Action Will Distract the Non-Debtor Individual Defendants from the Reorganization**

11. Debtors assert that the Automatic Stay should be extended to the Individual Defendants because they are "absolutely critical" to the Company's reorganization efforts. Mot. at ¶ 15.

12. "[T]he determination of whether the non-debtors' commitment of time or financial resources is sufficient to merit the relief sought is fact-determinative, and the burdens upon the non-debtors to meet the necessary criteria very demanding." *Univ. Med. Ctr. v. Am. Sterilizer Co. (In re Univ. Med. Ctr.)*, 82 B.R. 754, 758 (Bankr. E.D. Pa. 1988).

13. Non-debtor Mr. Granara is not currently employed by A123 Systems, so he cannot possibly be "critical" to its reorganization efforts. *See* Mot. Ex. B (describing Mr. Granara as the Company's *former* chief financial officer). As for non-debtors Mr. Vieau and Mr.

Prystash, Debtors state only that they are "already subject to enormous pressure and additional obligations in connection with these Chapter 11 Cases and further obligations stemming from the pursuit of the Actions would come at great cost to the Debtors' estates." Mot. at ¶ 16. Yet, Debtors submit no evidence, in the form of declarations or otherwise, describing how the Class Actions will result in "additional obligations" or "great cost to the Debtors' estates." *Id.*

14.   Indeed, Debtors cannot make this showing. The Class Action is at the pleading stage, and all discovery and other proceedings are stayed pending the resolution of a motion to dismiss, which is not yet fully briefed. At this stage, the Class Action poses only minimal obligations (if any) on the Individual Defendants. *See In re Univ. Med. Ctr.*, 82 B.R. at 758 (declining to extend stay to non-debtors who "conceded that the lawsuits against them individually were unlikely to require much expenditure of their time"). Moreover, "[t]his exception has generally been limited to circumstances where principals or officers of a corporate entity have guaranteed the corporate debt." *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atl. Handling Sys., LLC)*, 304 B.R. 111, 129 (Bankr. D.N.J. 2003). Debtors submit no information indicating that the Individual Defendants have guaranteed the Debtors' debt.

**B.   Debtors Fail to Demonstrate that the Class Action Against the Individual Defendants is Essentially an Action Against the Debtors**

15.   Debtors argue that the Automatic Stay should be extended to the Individual Defendants "because the Articles of Incorporation provide for the indemnification of the Third Party Defendants . . . and because a recovery against the insurance policy covering the Third Party Defendants would also reduce future coverage available to the Debtors." Mot. at ¶ 17. Debtors do not submit with the Motion the indemnification or insurance agreements purportedly giving rise to these obligations.

16. "Cases determining whether the proceeds of a liability insurance policy are property of the estate are controlled by the language and scope of the specific policies at issue." *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010) ("[T]he courts are in disagreement over whether the proceeds of a liability insurance policy are property of the estate."); *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 232-33 (3d Cir. 2004) ("Courts finding 'related to' jurisdiction over claims against non-debtors based in part on shared insurance policies have relied not only on extensive record findings regarding the terms and operation of the subject policies, but also on additional evidence of automatic liability against the debtor."); *Uni-Marts*, 404 B.R. at 781 (holding that even if "[t]he debtor maintains a D&O policy to cover losses of this type," the "proceeds of said policy may not actually be part of the estate"); *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004) (holding that whether the proceeds of a liability insurance policy are property of the estate is "controlled by the language and scope of the policy at issue not by broad, general statements").

17. Numerous cases hold that insurance proceeds are *not* property of the estate. *See, e.g., In re MCSi, Inc., Sec. Litig.*, 371 B.R. 270, 274-75 (S.D. Ohio 2004) ("[I]t is difficult to imagine any type of D&O liability policy that would permit the [debtor] corporation to maintain ownership of the proceeds, as opposed to paying them directly to the successful plaintiff in an action against a director or officer."); *In re Sunbeam Sec. Litig.*, 261 B.R. 534, 537 (S.D. Fla. 2001) (holding that insurance proceeds were not property of the estate because they "either will be paid to the non-debtor co-defendants based on their indemnification claims or to Plaintiffs in those actions implicating the insurance policies"); *cf. Camall Co. v. Steadfast Ins. Co. (In re Camall Co.)*, 16 Fed. Appx. 403, 406-07 (6th Cir. 2001) (holding that insurance proceeds were

not property of the estate and noting that the debtor's rights therein were "limited by the contractual provisions within that policy").

18.  Debtors have not submitted with their Motion the insurance policy they contend is applicable, making it impossible to perform the policy-specific analysis necessary to determine if estate assets are implicated. Nor do Debtors describe the terms of the policy, who owns the policy, what conduct may be covered, whether exclusions may apply, or other key information about the purported coverage that supposedly warrants extending the stay to claims against the Individual Defendants. Debtors also fail to disclose whether other policies may cover the Individual Defendants. On November 3, 2012, Plaintiffs' counsel requested that Debtors' counsel produce the insurance policy mentioned in the Motion; Plaintiffs' counsel continue to await a response to this request. *See* Young Decl. ¶ 6.

19.  In *In re Combustion Engineering*, the Third Circuit reversed the bankruptcy court's proposed findings of fact and conclusions of law in part because "[n]either the Bankruptcy Court nor the District Court made factual findings regarding the terms, scope or coverage of the allegedly shared insurance policies." *In re Combustion Eng'g, Inc.*, 391 F.3d at 232.

20.  As Debtors fail to submit the policy or even describe its terms, the record fails to demonstrate that the Class Action will affect estate assets.

21.  Likewise, Debtors fail to submit the Articles of Incorporation purportedly obligating A123 Systems to indemnify the Individual Defendants, nor do Debtors describe the terms of the purported indemnification obligation. A123 Systems' Certificate of Incorporation, however, is publicly filed with the Securities and Exchange Commission. The indemnification provisions contained therein only allow for indemnification if the Individual Defendants "acted

in good faith and in a manner . . . reasonably believed to be in, or not opposed to, the best interests of the Corporation." *See* Certificate of Incorporation § 7.1 at p. 37, Young Decl. Ex. B. Moreover, the Individual Defendants are only entitled to indemnification to the extent the amounts to be indemnified are not covered by insurance. *Id.*

22. The existence of an indemnification agreement typically warrants extending the automatic stay to non-debtors only where the indemnification obligation is absolute. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) ("An illustration of [unusual circumstances] would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case."); *Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Serv.*, 426 B.R. 520, 525 (E.D. Pa. 2010) ("[T]he stay is applied to third parties only where the debtor's 'indemnification obligations' are 'absolute.'"); *Stanford v. Foamex LP*, No. 07-4225, 2009 U.S. Dist. LEXIS 32405, at *13 n.9 (E.D. Pa. Apr. 15, 2009) (noting that "[debtor's] indemnification obligations do not appear absolute, as required by courts extending the stay due to the existence of indemnification agreements"); *Hess Corp. v. Performance Texaco, Inc.*, No. 08-1426, 2008 U.S. Dist. LEXIS 94263, at *6 (M.D. Pa. Nov. 19, 2008) ("These circumstances have generally been limited to actions against non-debtors who are entitled to absolute indemnity by the debtor for a judgment against them."); *Mid-Atlantic Handling Sys.*, 304 B.R. at 128 ("This exception has ordinarily been limited to proceedings against a third-party defendant who is entitled to absolute indemnity by the debtor on account of any judgment that might result against the non-debtor."). Here, A123 Systems' obligation to indemnify the Individual Defendants is conditional, not absolute.

23. At most, Debtors argue, without evidentiary support, that they may be obligated to indemnify the Individual Defendants at some future date. This does not constitute the

"unusual circumstances" necessary to warrant extending the automatic stay to non-debtors. *See Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984, 995 (3d Cir. 1984) (holding that litigation against non-debtor was "[a]t best, . . . a mere precursor to [a] potential third party claim for indemnification"); *Downey*, 428 B.R. at 607 (describing potential for indemnification as "hypothetical or speculative").

24. Debtors' reliance on *In re W.R. Grace & Co.*, No. 01-01139, 2004 Bankr. LEXIS 579 (Bankr. D. Del. Apr. 29, 2004) is misplaced. *See* Mot. at ¶¶ 17, 20. In that case, the court extended the automatic stay to non-debtors because the debtors had *already* assumed defense costs. *In re W.R. Grace & Co.*, 2004 Bankr. LEXIS 579, at *11-12. Here, Debtors have provided no evidence indicating they have incurred such costs. *See* Mot. at ¶ 18 (stating that a judgment in the Class Action "would *almost certainly* result in an indemnification claim") (emphasis added).

25. Moreover, where, as here, the Individual Defendants are subject to independent liability, separate from the Company's liability, extending the stay is simply not warranted. *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) ("Where the debtor and another are joint tortfeasors or where the non-debtor's liability rests upon his own breach of duty, an automatic stay would clearly not extend to such non debtor.") (quotations omitted); *In re MCSI, Inc., Sec. Litig.*, 371 B.R. 270, 273 n.3 (S.D. Ohio 2004) ("The possibility of independent liability of the individual Defendants seems particularly apparent, given that Claim Two in Plaintiffs' Complaint alleges a violation of Section 20(a) of the Securities Act against the individual Defendants only, and not [against the debtor]."); *see also Duval v. Gleason*, No. 90-0242, 1990 U.S. Dist. LEXIS 18398, at *9-13 (N.D. Cal. Oct. 19, 1990) (declining to extend stay to non-debtor officers because "the securities laws allow for the independent liability of the

officers or other parties involved" and "[t]o hold otherwise would . . . create a sizeable loophole through which malfeasant corporate officers and directors and their insurers could escape, at least temporarily, all civil prosecutions of their individual fraudulent acts by having the corporation file a bankruptcy petition").

### C. Debtors Will Not Be Collaterally Estopped From Relitigating Issues Decided in the Class Action

26. Debtors argue that the Court should extend the automatic stay to the non-debtors because "[a]llowing the Class Action to go forward presents a substantial risk that Debtors may be collaterally estopped from relitigating the issues adjudicated in the Class Action." Mot. at ¶ 22. This is incorrect.

27. The Third Circuit has ruled that the automatic stay protects a debtor from the collateral estoppel effect of non-debtor litigation. *See In re Pacor*, 743 F.2d at 995 (holding that debtor "could not be bound by res judicata or collateral estoppel" if non-debtor litigation proceeded and noting that the debtor "would still be able to relitigate any issue . . . in response to a subsequent claim"); *see also In re Rubenstein*, 105 B.R. 198, 202 (Bankr. D. Conn. 1989) ("I conclude that the debtor would not be bound by any judgment that the Committee might obtain against the Bank in state court and that therefore the Bank is not protected by the automatic stay."); *Plessey Precision Metals, Inc. v. The Metal Ctr. (In re Metal Center, Inc.)*, 31 B.R. 458, 463 (Bankr. D. Conn. 1983) ("Since [the debtor] cannot be compelled to appear in nonbankruptcy court to defend his creditor's or guarantor's claim, absent relief from the automatic stay, principles of law, which might otherwise bind the debtor, are of no effect in a bankruptcy context.").

28. Indeed, "if the possibility of 'later use against the debtor . . . of an adverse decision . . . could support application of the stay, there would be vast and unwarranted

interference with creditors' enforcement of their rights against non-debtor co-defendants.'" *Forcine*, 426 B.R. at 525 (quoting *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003)).

29. Debtors contend that because of the potential for an adverse finding against the Individual Defendants, Debtors "would be in a position where they would have to become actively involved in the Class Action and expend estate resources in the process." Mot. at ¶ 22. However, as any such adverse finding cannot be used against Debtors, there is no basis for them to expend their resources participating in the litigation, which in any event is stayed pending resolution of a motion to dismiss.[3]

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny the Motion.

---

[3] Even though Debtors will not be collaterally estopped by any findings in the Class Action, to further allay Debtors' concerns, Plaintiffs would stipulate that they would not use any findings in the Class Action against the Debtors once the bankruptcy is concluded or in future litigation. *See Wolf Fin. Grp., Inc. v. Hughes Constr. Co. (In re Wolf Fin. Grp., Inc.)*, No. 94-8884, 1994 Bankr. LEXIS 2350, at *20 (Bankr. S.D.N.Y. Dec. 15, 1994) ("Debtors will not be collaterally estopped by any decision in the North Carolina Litigation because the plaintiffs therein have agreed not to assert it in future litigation with debtors.").

Dated: November 5, 2012

        **MILBERG LLP**

        */s/ Jennifer L. Young*

        Jennifer L. Young (*pro hac vice* motion pending)
        jyoung@milberg.com
        Ariana J. Tadler
        atadler@milberg.com
        Charles Slidders
        cslidders@milberg.com
        One Pennsylvania Plaza, 49th Floor
        New York, New York 10119
        Tel: (212) 594-5300
        Fax: (212) 868-1229

        *Counsel for Lead Plaintiff*

        **BERMAN DEVALERIO**
        Kathleen M. Donovan-Maher
        kdonovan-maher@bermandevalerio.com
        Bryan A. Wood
        bwood@bermandevalero.com
        One Liberty Square
        Boston, Massachusetts 02109
        Tel: (617) 542-8300
        Fax: (617) 542 1194

        *Lead Counsel for Plaintiffs*

        **POMERANTZ GROSSMAN, HUFFORD,**
            **DAHLSTROM & GROSS, LLP**
        Marc I. Gross
        migross@pomlaw.com
        Jeremy A. Lieberman
        jalieberman@pomlaw.com
        Emma Gilmore
        egilmore@pomlaw.com
        100 Park Avenue, 26th Floor
        New York, New York 10017-5516
        Tel: (212) 661-1100
        Fax: (212) 661-8665

        *Counsel for Plaintiffs*